**KIEFFER v. BLUE SEAL CHEMICAL CO.**

No. 10676.

United States Court of Appeals
Third Circuit.

Argued May 5, 1952.

Decided May 13, 1952.

Edward R. McGlynn, Newark, N. J. (McGlynn, Weintraub & Stein, Newark, N. J., on the brief), for defendant-appellant.

Arnold B. Elkind, New York City (Milton, McNulty & Augelli, Jersey City, N. J., Striessguth, Berens & Rodenberg, of New Ulm, Minn., Leo J. Lauerman, of Olivia, Minn., on the brief), for plaintiff-appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

This suit involves recovery of damages for personal injury in what is colloquially called a products liability case. The defendant manufactures a mixture for cleaning clogged drains. The plaintiff is a plumber. In the course of doing plumbing work in Minnesota, where he lives, he used some of the defendant's product. While using it there was an explosion in which a quantity of corrosive material was blown out of the pipe upon which he was working and into the plaintiff's face. He suffered exceedingly severe injuries which will, according to testimony, last the rest of his life and very greatly impair his earning capacity. The jury found for the plaintiff.

■ The case was tried in a District Court for the District of New Jersey and the only ground for federal jurisdiction is diversity. The court, of course, applies New Jersey law. In this case it is the New Jersey Conflict of Laws rule with regard to Torts which, following the usual rule, refers to the place of injury.[1] This phase of the case was not developed by the parties. However, in this instance the questions do not turn upon differences of state law and we cite the prevailing rule merely to reiterate, what we are so often called upon to reiterate in these cases, that we are applying state law, not developing an independent federal jurisprudence.

■ Evidence on negligence was abundant and, on some phases, overpowering. This defendant put out a product composed of sodium hydroxide, powdered metal aluminum, and a supposedly inert substance referred to as "nitrate," although nobody described just what "nitrate" in fact was. This mixture, when added to water, produced great heat, forming sodium aluminate and free hydrogen. In the batch of the product which the plaintiff used, the formula was not even followed and this particular carton of the material which the plaintiff had bought contained more aluminum than was ordinarily used in the manufacture of the product. This, according to testimony, increased the vigor of the chemical reaction. The label contained no warning of the product's dangerous nature. To put out for public use so dangerous a product without notice of its nature, amounted almost, if not wholly, to wanton and reckless misconduct.

■■ There was a conflict in testimony as to the precise cause of the accident. We feel clear, however, that the evidence was sufficient to take the case to the jury. The resolving of the conflicting theories presented by experts for each side was a matter for the jury.

■ We do not find error in the examination of the defendant's president concerning letters of complaint received by other users of the product. The judge carefully confined the testimony to the question of notice to the defendant of the danger in using its solvent. We do not find reversible error in this method of bringing home notice to the defendant.

Finally, the defendant complains that the judge wrongly charged the jury on the "capital fund" theory of the measure of damages. The worst that could be said of the judge's charge on this point is that it may have been ambiguous. The charge spoke of "return." But it also spoke of "annuity." Was the jury to give the plaintiff a fund the income of which would recompense him for lost earning capacity? Or was the jury to figure, as best it could,

---

1. Potter v. First Nat. Bank of Morristown, 1930, 107 N.J.Eq. 72, 151 A. 546; Friedman v. Greenberg, 1933, 110 N.J.L. 462, 166 A. 119, 87 A.L.R. 849; Curry v. Delaware, L. & W. R. R. Co., 1938, 120 N.J.L. 512, 1 A.2d 14; Restatement, Conflict of Laws, §§ 377–383.

a lump-sum recovery which, during the plaintiff's expectancy, would be expended?

The defendant took no exception to the charge at the time. We think this is the very type of case for which Rule 51[2] was provided. If the judge's charge seems to counsel ambiguous as he hears it, he can seek to have it further amplified, revised or amended so that the jury will get a clear picture. But if it is not so confused that the experienced trial lawyer senses no confusion as it is given, we do not think that because it does not appear sun clear in type thereafter there is a basis for complaint. At the worst this charge was ambiguous, not erroneous. We think that a complaint about it, if there was a complaint, should have been made at the time and the trial judge given an opportunity to clarify his language.

The judgment of the district court will be affirmed.

2. Fed.R.Civ.P. 51, 28 U.S.C.A., "At the close of the evidence, or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."