Denis HENRY, a minor, by Gaston Henry and Lorraine Henry, his natural parents and guardians, et al., Plaintiffs,

v.

RICHARDSON–MERRELL, INC., a Delaware corporation, and Merrell-National Laboratories, Division of Richardson-Merrell, Inc., a Delaware corporation, Defendants.

Civ. A. No. 289–73.

United States District Court,
D. New Jersey.

Nov. 14, 1973.

Clapp & Eisenberg, by Robert P. Gorman, Newark, N. J., and Arthur Raynes, Philadelphia, Pa., for plaintiffs.

Riker, Danzig, Scherer & Brown, by Peter N. Perretti, Jr., Newark, N. J., and Colin Irving, Montreal, Quebec, Canada, for defendants.

## OPINION

COOLAHAN, District Judge:

### JURISDICTION AND PROCEDURE

This is a civil action for personal injuries and damages brought on behalf of one Denis Henry, a minor of 11 years, by his natural parents and guardians, Gaston Henry and Lorraine Henry, and for themselves individually. The plaintiffs are all citizens of Quebec, Canada. Defendant Richardson-Merrell, Inc., is a Delaware corporation having its principal place of business in the State of New York.[1] Defendant engages in both a national and international drug business, and does transact some business in the State of New Jersey.

Plaintiffs commenced this action on or about January 31, 1973 in the Superior Court of New Jersey, Law Division, Bergen County. Defendant was served with a summons and a copy of the complaint through its registered agent for service of process in New Jersey, the Corporation Trust Company. Defendant subsequently petitioned for removal of this suit to the Federal District Court of New Jersey on the grounds of diversity of citizenship between the parties, and a cause of action in excess of $10,000. 28 U.S.C. § 1446; 28 U.S.C. § 1332.

Plaintiff Lorraine Henry claims that in July of 1961 she ingested a pill called Kevadon while she was in a pregnant condition and a patient in Hospital Maisonneuve, located in the City of Montreal in the Province of Quebec, Canada. In March of 1962 she gave birth to the infant-plaintiff, Denis Henry, in the

---

1. The second named defendant in the complaint is Merrell-National Laboratories, a specific division of Richardson-Merrell, Inc., located in Cincinnati, Ohio. Since it is not a legal corporate entity and has no separate identity or existence as such, the Court will treat this action as being against a single corporate defendant, Richardson-Merrell, Inc.

same hospital. Denis Henry was born with severe birth defects and anomalies, including malformed ears, deafness, left facial paralysis, bilateral cranial nerve palsy, micrognathia, psychic damage, and severe disfiguring cosmetic abnormalities, all of which are apparently permanent.

The complaint alleges that in 1961 defendant was engaged in testing, manufacturing, and marketing the drug thalidomide in the pill form of Kevadon. The complaint further alleges that Denis Henry's injuries and damages are a proximate result of defendant's "negligent, fraudulent, wilful, wanton and reckless conduct" in testing, manufacturing and marketing the drug Kevadon and its component ingredient thalidomide, a drug "[un]fit for the purpose intended, not fit for human consumption, not free of defects, and . . . not of merchantable quality."

## ISSUE BEFORE THE COURT

Defendant, Richardson-Merrell, Inc., now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant contends: (a) this diversity action is initially governed by choice-of-law rules of New Jersey; (b) under all of the circumstances of this suit New Jersey choice-of-law rules require the application or "borrowing" of the statute of limitations of Quebec, Canada; (c) plaintiffs' claims for relief are, under Quebec law, absolutely barred and extinguished by a Quebec Civil Code prescription statute; and (d) by bringing their action to New Jersey plaintiffs are merely "forum-shopping" for a jurisdiction with a favorable statute of limitations in an effort to circum-

vent the law of Quebec, the jurisdiction most significantly connected with the parties, transactions, and alleged injuries involved in this law suit.

Plaintiffs argue that defendant's motion for summary judgment should be denied in that: (a) New Jersey's choice-of-law rules require that New Jersey's statute of limitations governs the timeliness of this action since this State has a substantial governmental interest in the matter, while Quebec has no legitimate governmental interest in having its limitations period applied; (b) New Jersey has significant contacts and ties with the subject matter of the litigation since defendant manufactured and clinically tested the drug thalidomide in New Jersey; and (c) even if the Quebec statute of limitations is applied to bar plaintiff's tort action in New Jersey, defendant's motion for summary judgment should still be denied because the facts alleged in the complaint make out a contract action under Quebec law which is not barred by the Quebec prescription statute.

Defendant's motion for summary judgment focuses on the issue of application of statutes of limitation in a conflict-of-laws context. Therefore, solely for the purposes of deciding this motion, defendant concedes and the Court will take as true most of the factual allegations recited in plaintiffs' complaint.[2] Mazzilli v. Accident, etc. Casualty Ins. Co., 26 N.J. 307, 139 A.2d 741 (1958).

## MERITS

The Court will commence its inquiry by taking judicial notice of several relevant statutory provisions contained in the Civil Code of Quebec, Canada.[3]

2. However, one critical issue of fact is not conceded as true for the purposes of this motion and will be discussed by the Court later in this opinion. This factual issue deals with the situs of manufacture of the thalidomide contained in the Kevadon pill taken by the infant-plaintiff's mother.

3. Rule 44.1 of the Fed.Rules of Civ.Proc. provides:
"A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Rule 43. The court's determination shall be treated as a ruling on a question of law."

First, Article 2262 of the Civil Code provides that an action for bodily injuries is "absolutely extinguished" after one year has elapsed from the date the cause of action accrues. Second, Article 2267 of the Civil Code provides that this one-year prescription period shall "run against minors."[4] Under these provisions the infant-plaintiff's tort action against defendant is clearly time-barred under Quebec law. McCormack v. Sherbrooke Hospital (1935) 39 P.R. 1; Plamondon v. Hill (1937) 43 R.L. 263; Remmelle v. Laporte (1967) P.R. 66.

■■ The Court also takes judicial notice of the relevant laws of the State of New Jersey. First, New Jersey has a two-year statute of limitations period governing the timeliness of personal injury actions. Second, New Jersey, unlike Quebec, "tolls" this two-year period on behalf of infants until they reach the age of 21 years.[5] Therefore, the infant-plaintiff's tort action is not time-barred in New Jersey, *provided* that New Jersey's choice-of-law rules preclude application of the Quebec time-bar.[6]

4. See Civil Code of the Province of Quebec (Quebec C.C.) (1972). Article 1053 provides:

"Every person capable of discerning right from wrong is responsible for the damage caused by his fault to another, whether by positive act, imprudence, neglect or want of skill."

This provision has been interpreted by the Quebec courts to include the right of a minor to bring a tort action for prenatal injuries. Montreal Tramways Co. v. Leveille (1933) S.C.R. 456. The parents may also raise a claim for damages which they have personally suffered. Regent Taxi and Transport Co. v. Congregation des Petites Freres de Marie (1932) A.C. 295.

Article 2183 describes "prescription" as follows:

"Prescription is a means of acquiring or of being discharged, by lapse of time and subject to conditions established by law. In positive prescription title is presumed or confirmed and ownership is transferred to a possessor by the continuance of his possession.

Extinctive or negative prescription is a bar to, and in some cases precludes, any action for the fulfilment of an obligation or the acknowledgment of a right when the creditor has not preferred his claim within the time fixed by law."

Article 2262 provides:

"The following actions are prescribed by one year:

.   .   .   .   .

2. For bodily injuries, saving the special provisions contained in Article 1056 and cases regulated by special laws [these special provisions are not relevant to the case at bar]."

Article 2267 provides:

"In all the cases mentioned in Article 2250, 2260, 2261 and 2262 the debt is absolutely extinguished and no action can be maintained after the delay for prescription has expired."

Article 2269 provides:

"Prescriptions which the law fixes at less than thirty years, other than those in favour of subsequent purchasers of immoveables, with title and in good faith, and that in case of rescission of contract mentioned in article 2258, run against minors, idiots, madmen and insane persons, whether or not they have tutors or curators, saving their recourse against the latter."

5. N.J.S.A. 2A:14-2 provides:

"Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued."

N.J.S.A. 2A:14-21 provides:

"If any person entitled to any of the actions or proceedings specified in sections 2A:14-1 to 2A:14-8 or sections 2A:14-16 to 2A:14-20 of this title or to a right or title of entry under section 2A:14-6 of this title is or shall be, at the time of any such cause of action or right or title accruing, under the age of 21 years, or insane, such person may commence such action or make such entry, within such time as limited by said sections, after his coming to or being of full age or of sane mind."

6. As for the individual causes of action raised by Denis Henry's parents, Gaston and Lorraine Henry, these are timebarred regardless of whether Quebec or New Jersey law applies. See Regent Taxi and Transport Co. v. Congregation des Petites Freres de Marie (1932) A.C. 295 and Rheaume v. City of Quebec (1959) S.C.R. 609 for a discussion of Quebec's time-bar. In New Jersey the two-year limitations period of N.J.S.A. 2A:14-2 governs the timeliness of a parent's individual claims for medical expenses, pain and suffering, embarrassment, humiliation, etc. N.J.S.A. 2A:14-21 tolls the statute of limitations in the case of a minor,

■ Since the infant-plaintiff's suit is a diversity action, and since defendant's motion for summary judgment raises a conflict-of-laws issue, this Court must apply whatever law would be applied by the courts of the forum state, New Jersey. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Mixing Equipment Co., Inc. v. Philadelphia Gear, Inc., 436 F.2d 1308 (3 Cir. 1971); Boase v. Lee Rubber & Tire Co., 437 F.2d 527 (3 Cir. 1970); Kieffer v. Blue Steel Chemical Co., 196 F.2d 614 (3 Cir. 1952). Specifically, this Court is bound to follow New Jersey's choice-of-law rules in determining whether New Jersey's statute of limitations or Quebec's prescription statute governs the timeliness of this action. Ramsay v. Boeing Co., 432 F.2d 592 (5 Cir. 1970).

■ An examination of the relevant New Jersey case law reveals that in recent years the courts of this State have clearly departed from the traditional conflicts rule that automatically chooses the "substantive" law of the place of the wrong, or the *lex loci delicti.* Instead, New Jersey has adopted the more modern and flexible conflicts doctrine applying the substantive law of that jurisdiction having the most substantial governmental interest in, or the most significant relationship to, or the closest contacts with, the subject matter or the parties in an action. Heavner v. Uniroyal, Inc., 63 N.J. 130, 305 A.2d 412 (1973); Rose v. Port of New York Authority, 61 N.J. 129, 139–140, 293 A.2d 371 (1972); Pfau v. Trent Aluminum Co., 55 N.J. 511, 263 A.2d 129 (1970); Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1964).

■ However, when New Jersey is the forum State for a foreign-based cause of action, New Jersey will apply its own "rules of procedure" in the action pending here, not the rules of procedure which the foreign State's courts would have applied if the action had been instituted there. See Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176 (1962), and the cases cited at 180, 180 A.2d 129.

Given the fact that statutes of limitation are ordinarily viewed as procedural in nature rather than substantive, New Jersey's courts have traditionally adhered to the settled common-law conflicts rule that "the forum applies only its own procedural statute of limitations and does not give effect to a statute of another state in which the cause of action arose—*unless* [emphasis added] that statute has been held by the state which enacted it to be substantive in nature, operating as a condition terminating the existence of the right instead of merely barring the remedy." Gordon v. Loew's, Inc., 247 F.2d 451, 454 (3 Cir. 1957); Goodwin v. Townsend, 197 F.2d 970 (3 Cir. 1952); Marshall v. Geo. M. Brewster & Son, Inc., *supra;* Restatement, Conflict of Laws 2d §§ 142–3 (1971); Leflar, American Conflicts Law § 127 (1968).

Citing this traditional rule, defendant in this action contends that although the limitations law of New Jersey will normally be applied in a suit based upon a foreign cause of action brought in New Jersey, a foreign cause of action will not be entertained by a New Jersey court *if* it is barred in the jurisdiction of the otherwise applicable law (Quebec) by a statute of limitations (C.C. arts. 2262, 2267) which bars the right and not merely the remedy.[7] To support its ar-

---

but it does not inure to the benefit of a parent. The tolling feature of the latter statutory section is of a personal character, and can only be set up by the infant and his representative. See Higgins v. Schneider, 61 N.J.Super. 36, 160 A.2d 165 (App.Div.), aff'd, 33 N.J. 299, 164 A.2d 299 (1960). The Court will therefore dismiss the individual causes of action brought by the plaintiffs

Gaston Henry and Lorraine Henry, and treat Denis Henry as the sole plaintiff in this action.

7. See Marshall v. Geo. M. Brewster & Son, Inc., *supra,* 37 N.J. at 181, 180 A.2d at 131: "When the legislature of a state creates or recognizes a right, it may, if it so chooses, subject it to a limitation in such manner

gument that the Quebec prescription statute is "substantive" rather than "procedural" in nature, the defendant has presented the Court with an exhaustive analysis of Quebec law. After reviewing the Quebec Civil Code provisions, considering the opinions of several Canadian law experts, and examining the relevant Canadian and American case law, I agree that the Quebec time-bar is substantive.[8] Nonetheless, I also find that the "substantive nature" of the Quebec prescription statute is no longer a particularly relevant considera-

that the right is to terminate upon expiration of the limitation. In such case, the limitation will be viewed not as simply procedural but as part of the state's substantive law to be given effect as such in other states as well as in the state of the enactment. . : . On the other hand, the legislature may intend that the limitation operate not as a condition of the right but as the ordinary statute of limitations which is customarily viewed as procedural."

8. Although I find that the *Uniroyal* decision drastically reduces the importance of a substantive/procedural analysis of Quebec law, a short discussion of this issue is justified in view of the fact that both parties in this dispute have spent considerable time and effort in arguing this question.

First, it appears from the face of Quebec C.C. art. 2267 that it is framed in substantive language rather than procedural language. Specifically, "the debt [right of action] is *absolutely extinguished* [emphasis added] and no action can be maintained after the delay for prescription has expired." See fn. 2 of this opinion.

Second, I have examined the affidavits and memoranda submitted on behalf of both parties by several foreign law experts, and I find the arguments of Messrs. Paul-Andre Crepeau and Jean Martineau concerning the substantive nature of Quebec's prescription more persuasive than the contrary arguments presented by Mr. Jean-Gabriel Castel.

Third, the greater weight of Canadian case law authorities tends to characterize Quebec's prescription as substantive. See in particular Couture v. The Queen (1972) F. C. 1137; Sicotte v. Minister of Justice (1969) C.A. 65; Marquis v. Lussier (1960) S.C.R. 442; City of Montreal v. McGee (1900) 30 S.C.R. 582; Dupuis v. Canadian Pacific Railway Co. (1898) 12 C.S. 193; Canadian Pacific Railway Co. v. Robinson (1891) 19 S.C.R. 582.

Fourth, the Supreme Courts of at least two States have found Quebec C.C. arts. 2262 and 2267 to be substantive. McLaughlin v. Blake, 120 Vt. 174, 136 A.2d 492 (1957); Dupuis v. Woodward, 97 N.H. 351, 88 A.2d 177 (1952). It should be noted, however, that in recent years both Vermont and New Hampshire have adopted more flexible approaches for dealing with conflicts-of-laws questions involving statutes of limitation. Jacques v. Jacques, 128 Vt. 140, 259 A.2d 779 (1969); Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966). See also Dindo v. Whitney, 429 F.2d 25 (1 Cir. 1970). Yet these later cases do not specifically reverse the findings of the earlier cases as to the substantive nature of Quebec's prescription statute.

Ennis v. Petry, 29 N.J. 236, 148 A.2d 722 (1959), apparently is the only New Jersey case which has dealt with the proper construction of Quebec's prescription. In that case the plaintiff, a New Jersey resident, brought a negligence action against another New Jersey resident, based upon an automobile accident occurring in Quebec, Canada. The defendant moved to dismiss the complaint on the ground that the cause of action was barred because the suit was not brought within one year after the date of the accident as prescribed by Quebec C.C. arts. 2262, 2267. The trial judge concluded that the Quebec prescription was substantive, and was therefore to be applied by the court to bar the plaintiff's action brought in New Jersey. On appeal the Supreme Court of New Jersey reversed and remanded the case on the ground that no opinion or memorandum was filed by the trial judge indicating how he informed himself of the Quebec law and its interpretation in the Canadian courts, and that further proceedings were needed in which both parties might submit "adequate proof of the relevant sections of the Quebec Code, a true and accurate translation, and proper evidence of the local construction of those sections." *Id.* at 238, 148 A.2d at 723. However, this issue was never reexamined by the trial court because the case was subsequently settled by the parties following its remand.

Pursuant to the provisions of Rule 44(a)(2) and Rule 44.1 of the Federal Rules of Civil Procedure, this Court has had the opportunity to examine the relevant sections of the Quebec Civil Code in a true and accurate translation, as well as proper evidence as to the local construction of these sections by the Quebec courts. After careful consideration, I tend to agree with the opinion voiced by the trial judge in *Ennis*, that the Quebec prescription statute is substantive, and under New Jersey's *old* choice-of-law rules would bar infant-plaintiff's present action.

tion in resolving the statute of limitations issue now before this Court, given the choice-of-law principles announced in the very recent decision by the Supreme Court of New Jersey in Heavner v. Uniroyal, Inc., *supra*, 63 N.J. 130, 305 A.2d 412.

*Uniroyal* announces a new choice-of-law rule in New Jersey regarding the application of statutes of limitation in foreign-based causes of action brought in the courts of this State, and clearly holds that New Jersey has now "discarded" the traditional law-of-the-forum rule. 63 N.J. at 140, 305 A.2d 412. Therefore, the decision must also be read as impliedly holding that New Jersey has also discarded the recognized "exception" of the law-of-the-forum rule, that a foreign statute of limitations should be applied in preference to that of the forum if it is characterized as "substantive" by the courts of the foreign jurisdiction.[9]

As this Court interprets the *Uniroyal* decision, the case directs that for choice-of-law purposes statutes of limitation will be assumed to be substantive and are therefore to be applied in the same manner as any other substantive law issues—by weighing the respective governmental "interests" of the forum State and the foreign jurisdiction.

The facts of *Uniroyal* are relatively uncomplicated. In October 1966 a resident of North Carolina, one Roy Heavner, purchased a truck trailer in Charlotte, North Carolina. While Heavner was driving the vehicle in April 1967, one of its tires blew out, causing the truck to crash into an abutment, seriously injuring Heavner.

In September 1970 Heavner and his wife instituted a products liability action in New Jersey for personal injuries, property damage, and loss of consortium. Since the action was brought more than three years after the accident, it would have been time-barred had it been brought in North Carolina. However, since the action was instituted less than four years from the date of delivery of the truck to the Heavners, they apparently hoped their action would not be time-barred under New Jersey law.[10] The named defendants in the action were the seller of the truck-trailer, Pullman, Inc., and the manufacturer of the allegedly defective tire, Uniroyal, Inc. Both defendants were subject to service of process in New Jersey, Pullman being a Delaware corporation doing a nationwide business retailing trailers equipped with Uniroyal tires, and Uniroyal being a New Jersey corporation doing a na-

9. Defendant contends that *Uniroyal* does "not extinguish the old test of the distinction between substantive and procedural" but merely adds "a new route to the same result." (Transcript at 15–16.) I find little to support this argument in *Uniroyal*. In that case the Court did not inquire into the procedural or substantive nature of the North Carolina statute of limitations in deciding to apply it in preference to the New Jersey statute of limitations. Furthermore, *Uniroyal* quotes with apparent approval a New York University Law Review article which criticizes this type of procedural/substantive analysis in choice-of-law questions. See 63 N.J. at 140, 305 A.2d 412, referring to Sedler, "The Erie Outcome Test as a Guide to Substance and Procedure in the Conflict of Laws," 37 N.Y.U.L.Rev. 813, 848.

In any event, defendant's argument that the Court has a "choice" in the method of analysis it employs is not sound in that it would conceivably lead to the inconsistent application of statutes of limitation in other cases.

10. Plaintiffs attempted to invoke the limitations provision of the sales chapter of the Uniform Commercial Code which provides for a four-year limitation period in a breach of sales contract action. U.C.C. § 2–725(2). However, this period does not apply to causes of action which have accrued before the Code goes into effect in a State. U.C.C. § 2–725(4). At the time of the accident the Code was in effect in New Jersey, N.J.S.A. 12A:1 et seq., while it did not become effective in North Carolina until July 1, 1967. Consequently plaintiffs were time-barred in North Carolina since that State's pre-Code limitation period governing actions for tortious injuries to the person and breach of contract was three years from the accrual of the cause of action. Gen.Stat. N.C. §§ 1–15(a), 1–52(1), (4) & (5). See 63 N.J. at 134, 305 A.2d 412.

tionwide business manufacturing, selling, and distributing its tires.

The Superior Court, Law Division, dismissed the action, and the Superior Court, Appellate Division, affirmed, 118 N.J.Super. 116, 286 A.2d 718 (1972). The Supreme Court of New Jersey granted certification, 60 N.J. 317, 288 A.2d 579 (1972), and that Court centered its inquiry on the following issues:

"This product liability case presents two important questions concerning the statute of limitations. The first, a choice-of-law question, is whether New Jersey, as the forum state, should apply its limitations statute or that of North Carolina—the state where all the parties are and where the cause of action arose and all preceding incidents occurred. The second question is whether, in any product liability case in this state in which our limitations law is applicable, the appropriate period is governed by our general statutes of limitations or is four years after the tender of delivery of the defective product as provided in the sales chapter of the Uniform Commercial Code, N.J.S.A. 12A:2–725." 63 N.J. at 132, 305 A.2d at 413.

The Court began its analysis of these issues by noting that New Jersey had consistently followed, "although not without some recent criticism," the common law conflicts rule "that the statute of limitations is ordinarily a matter of procedure, affecting the remedy and not the right, and is therefore, like other procedural attributes, controlled by the law of the forum rather than that of the state whose law otherwise governs the cause of action." 63 N.J. at 135, 305 A.2d at 415. However, the particular factual context of the *Uniroyal* case raised serious doubts in the Court's mind as to whether New Jersey had any real interest in the litigation which would justify the automatic application of New Jersey rather than North Carolina limitations law. Given the facts that all of the parties were subject to the jurisdiction of the North Carolina courts, North Carolina was the situs of the accident, "all

preceding incidents occurred" in North Carolina, and the Heavners offered the Court "no explanation why a timely action was not begun in North Carolina," especially since North Carolina would have been a far more convenient forum in which to try the action than New Jersey, the Court concluded that plaintiffs were clearly "forum-shopping" in New Jersey in an effort to avoid the consequences of the less favorable statute of limitations of North Carolina. 63 N.J. at 132–135 and fn. 3, 305 A.2d 412.

In view of these factual circumstances, the Court decided to "reexamine" New Jersey's traditional law-of-the-forum policy regarding the application of statutes of limitation. In conducting its inquiry into the historical and legal basis for the law-of-the-forum rule, the Court found that in some instances application of the rule was contrary to "justice and good sense," and often encouraged litigants to "forum-shop" for jurisdictions with favorable statutes of limitation. 63 N.J. at 135–139, 305 A.2d 412.

"General dissatisfaction" with the law-of-the-forum rule, the Court noted, had led some States to implement certain "counteracting" measures. In New Jersey, for example, the judge-made exception to the law-of-the-forum rule developed "that the foreign limitations period will be applicable where a statute creating the cause of action bars the right and not merely the remedy." 63 N.J. at 139, 305 A.2d at 417. In New York and other States "borrowing statutes" had been enacted to curb forum-shopping and bar an action in the forum State "if it is barred by the state where the defendant, or both of the parties, resided or of the place where the cause of action arose." 63 N.J. at 140, 305 A.2d at 417. The Court in *Uniroyal* did note, however, that "counteracting" measures were not completely satisfactory alternatives to the law-of-the-forum rule. 63 N.J. at 139–140, 305 A.2d 412.

The Court's factual and legal inquiry caused it to hold in *Uniroyal* that the North Carolina statute of limitations should be applied to bar the plaintiffs'

action in New Jersey.[11] Justice Hall, speaking for a unanimous Court, commented:

> "We are convinced the time has come, for the reasons previously outlined, to discard the mechanical rule that the limitations law of this state must be employed in every suit on a foreign cause of action. We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitation period has expired at the time suit is commenced here, New Jersey will hold the suit barred. In essence, we will 'borrow' the limitations law of the foreign state. We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us, for there may well be situations involving significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse." 63 N.J. at 140–141, 305 A.2d at 418.

In the case at bar both litigants cite various passages in *Uniroyal* as authority to support their respective positions. On its face, however, *Uniroyal* is not clearly dispositive of the statute of limitations issue which has been raised.

A shallow examination of the record could show that in some ways infant-plaintiff's suit does present a "factual pattern identical with or akin to that" found in *Uniroyal*. First, the infant-plaintiff's cause of action "arises in another state," Quebec, Canada. Second, both the infant-plaintiff and the corporate defendant are "present in and amenable to the jurisdiction of" Quebec. Third, Quebec's limitation period [had] expired at the time suit [was] commenced" by the infant-plaintiff in New Jersey.

On the other hand, this action is also distinguishable from *Uniroyal* in several ways: (1) "[A]ll of the preceding incidents" giving rise to the infant-plaintiff's cause of action may not have occurred in Quebec. Several "incidents," such as the testing and manufacture of the drug thalidomide, are alleged by the infant-plaintiff to have occurred in New Jersey. (2) In view of this alleged wrongdoing on the part of the defendant in this State, New Jersey might have a "substantial or sufficient interest" in applying its own statute of limitations rather than "borrowing" Quebec's prescription statute. (3) This action may possibly involve "significant interests of this state where it would be inequitable or unjust" to bar the infant-plaintiff's suit in New Jersey by "borrowing" Quebec's prescription. (4) It is not clear at this time that "the substantive law of the foreign state [Quebec]" would necessarily be applied to other legal issues which may be raised during the course of this litigation.[12]

---

11. The Court further held that even if New Jersey rather than North Carolina limitations law were to be applied, the plaintiffs' action would still be barred, since a strict tort liability action for consequential personal injury and property damage brought against a manufacturer, seller, or supplier is governed by New Jersey's two-year general statute of limitations, N.J.S.A. 2A:14–2, rather than by the four-year limitations provision of the sales chapter of the Uniform Commercial Code, N.J.S.A. 12A:2–725. 63 N.J. at 156–157, 305 A.2d 412.

12. Prior to discussing the statute of limitations questions raised in *Uniroyal*, the Court there held that New Jersey did not have a "sufficient interest" in the cause of action to apply New Jersey substantive law in preference to that of North Carolina regarding such issues as the extent of the defendant's strict tort liability, or whether plaintiff's wife could maintain an action for loss of consortium. See 63 N.J. at 134–135 fns. 3 and 4, 305 A.2d 412.

However, unlike the case at bar, the *Uniroyal* Court was dealing with a relatively clear-cut and undisputed fact pattern. Until the facts of the present case are sorted out, and until the statute of limitations issue is resolved, I feel that it would be premature to comment in this opinion as to whether Quebec's substantive law would govern this action in general.

■ In view of these initial observations, and given the fact that I interpret *Uniroyal* as requiring a governmental interest analysis of the statute of limitations issue now in dispute, the critical question centers on whether or not New Jersey has a "substantial interest" which would justify the application of its statute of limitations in this action. In order to determine the extent of New Jersey's "interest" in the matter, the Court must examine the "purposes and policies" behind the respective New Jersey and Quebec statutes, and then ascertain whether New Jersey has a "sufficient contact" with this litigation to justify the application of New Jersey's statute of limitations in preference to "borrowing" that of Quebec.[13] Pfau v. Trent Aluminum Co., *supra*; Mellk v. Sarahson, *supra*.

Richardson-Merrell argues that this Court is not required to conduct any inquiry into the relevant policies behind the limitations laws of New Jersey and Quebec. To support this assertion defendant cites the fact that the Court in *Uniroyal* did not conduct any policy analysis of either the North Carolina or New Jersey statute of limitations. Consequently, defendant contends that the proper choice-of-law methodology is simply to count the number of "contacts" found in Quebec and New Jersey, and then apply the law of that jurisdiction "having the most significant relationship and closest contacts with the occurrence and the parties." Rose v. Port of New York Authority, *supra*, 61 N.J. at 140, 293 A.2d at 377.

This argument can be easily answered. In *Uniroyal* there was no concurrent "contact" in New Jersey sufficient to justify a comparative policy analysis.[14] Furthermore, a careful reading of the *Rose* case does not convince this Court that New Jersey's governmental interest analysis method rests solely on a "counting of contacts" inquiry.[15]

---

13. New Jersey's governmental interest choice-of-law principles have developed primarily within the context of automobile accident cases which have involved multiple State "contacts." See Pfau v. Trent Aluminum Co., *supra;* Mellk v. Sarahson, *supra;* Van Dyke v. Bolves, 107 N.J.Super. 338, 258 A.2d 372 (App.Div.1969); and Mullane v. Stavola, 101 N.J.Super. 184, 243 A.2d 842 (Law Div. 1968). Furthermore, New Jersey has also followed to a great extent the choice-of-law approach adopted in New York. See Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963); Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (Ct.App. 1965); Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (Ct.App. 1966); and Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (Ct.App. 1969).

*Pfau* and *Mellk* are cited by the Court in *Uniroyal* as being the leading New Jersey cases concerning the application of governmental interest choice-of-law principles. 63 N.J. at 135 fn. 3, 305 A.2d 412. The outcome of these cases specifically turned upon a judicial inquiry into *both* the significance of statutory policies and concurrent "contacts." For an excellent discussion of these cases see Note, "Conflict of Laws—The Application in New Jersey of the Government Interest Analysis Approach to Choice of Law Problems of Tort Liability," 3 Rutgers (Camden) L.J. 165 (1971).

14. 63 N.J. at 135 fn. 3, 305 A.2d at 414: "Our only possible interest is that Uniroyal, a national company, is incorporated here and that is not enough. *Cf.* Gore v. United States Steel Corp., 15 N.J. 301, 312, 104 A. 2d 670 (1954), cert. den. 348 U.S. 861, 75 S.Ct. 84, 99 L.Ed. 678 (1954). All other interests are North Carolina's."

15. Rose v. Port of New York Authority, *supra*, was an action brought by an airline passenger for injuries sustained when he walked into or was struck by an automatic glass door at JFK airport in New York City. In reversing the Appellate Division, which had held that the law of New York should govern because the mishap occurred in that State, the New Jersey Supreme Court made the following observations: " . . . But we have departed from this traditional conflict of laws rule that automatically chooses the law of the place of the wrong, the *lex loci delicti*, and have adopted, as has New York, the more flexible doctrine that applies the law of that jurisdiction having the most significant relationship and closest contacts with the occurrence and the parties [citing *Pfau, Mellk*, and *Babcock*]. The plaintiff is a resident of New Jersey and the defendant a bi-state governmental agency in which

An examination of the relevant Canadian case law indicates that the short prescription period of Quebec C.C. art. 2262 is primarily directed toward preserving the "public order." Freeman v. Stanley Bagg Corp. (1935) 39 P.R. 248, 250–251; City of Montreal v. McGee (1900) 30 S.C.R. 582, 585. I interpret the phrase "public order" to mean that Quebec's statutory policy is geared to protecting Quebec citizens and the Quebec courts from excessive and tardy litigation, i. e., stale claims.[16] In accord is Dindo v. Whitney, 429 F.2d 25 (1 Cir. 1970). This Quebec "protective" policy outlook is further evidenced in that Quebec courts are *required* to dismiss an action on the ground of prescription whether or not the prescription is raised by the defendant.[17] Marquis v. Lussier (1960) S.C.R. 442; Dame B v. Royal Bank of Canada (1970) S.C. 227.

New Jersey's statute of limitations policy is somewhat similar to that of Quebec. N.J.S.A. 2A:14–2 is chiefly designed to penalize dilatoriness, stimulate litigants to prosecute causes of action diligently, and spare the courts and citizens of this State from litigating stale claims. Rosenau v. City of New Brunswick, 51 N.J. 130, 238 A.2d 169 (1968). However, the tolling provisions of N.J.S.A. 2A:14–21 provide a notable exception to this policy.[18]

Given that infant-plaintiff here is not suing Richardson-Merrell in a Quebec court, and that defendant is not a Quebec corporation, this Court's view is that should New Jersey's statute of limitations be applied, the public policy of Quebec would not be significantly frustrated.[19] On the contrary, Quebec could well take a positive view of an op-

---

this State has an interest no different than that of New York. Whether the misadventure took place at Kennedy Airport or at Newark Airport would seem of no significance; the situs of the event seems of little moment. While we think, therefore, that New Jersey law governs, we believe the result would have been the same had suit been brought in New York." 61 N.J. at 140, 293 A.2d at 376.

The Court in *Rose* apparently thought New Jersey's obvious "interest" in the litigation precluded the necessity for a more intensive analysis. It should also be noted that while *Rose* was decided after *Pfau* and *Mellk*, it was *not* cited in *Uniroyal*.

*Rose* certainly does not support defendant's contention that a "counting of contacts" is the proper method of conducting a governmental interest analysis in New Jersey. *Rose* cites *Pfau* and *Mellk* as representative of New Jersey's choice-of-law method, yet in neither of these cases did the Court rely upon a simple "counting of contacts." Although New Jersey has at times considered adopting a "counting of contacts" rule, it has never done so. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 170 A.2d 22 (1961); Wilson v. Faull, 27 N.J. 105 (1958). See Note, 3 Rutgers L.J., *supra*, at 173.

16. It is also interesting to note that Quebec has traditionally enacted short prescriptions specifically regarding the liabilities of railroads and corporations. See the discussions in Freeman v. Stanley Bagg Corp., *supra*, at

250; and Canadian Pacific Railway v. Robinson (1891) 19 S.C.R. 292, at 297–298.

17. Quebec C.C. art. 2188 provides:
"The Court cannot of its own motion supply the defence resulting from prescription, *except in cases where the right is denied.*" [Emphasis added.]

18. See fn. 4 of this opinion.

19. In Dindo v. Whitney, *supra*, the First Circuit had occasion to conduct a similar analysis of Quebec law. In that case the plaintiff, a Vermont resident, sued the defendant, a New Hampshire resident, for personal injuries which he suffered in an automobile accident which occurred in Quebec while the two were en route to Maine. The negligence action was brought in the Federal District Court in New Hampshire; the defendant pleaded the Quebec time-bar, and the court dismissed the action. On appeal the lower court's judgment was vacated. The Circuit Court attached no weight to the defendant's contention that under the Quebec statute the plaintiff's cause of action had been "extinguished." Instead, it analyzed the statute of limitations question as follows:

"... we are satisfied that the New Hampshire court would apply the New Hampshire statute of limitations in the instant case. The parties involved have only the most fortuitous relation to Quebec. Quebec's only interests underlying its statute of limitations are to protect its own citizens, and possibly its own

portunity accorded a Quebec ⬛⬛⬛⬛ to escape a harsh, if not archaic, ⬛⬛⬛scrip-tion statute through a fair hear⬛⬛g in a court sitting in New Jersey.[20]

Application of Quebec's time-bar would tend to frustrate New Jersey's public policy since New Jersey does not consider a claim "stale" if the time limit for bringing that claim is statutorily "tolled." [21] Neither is New Jersey concerned only with the protection and self-interest of its own citizens. A non-domiciliary plaintiff may sue here, just as a non-domiciliary defendant may be sued here, and both may seek to invoke the rights and privileges guaranteed by the laws of this State. Pfau v. Trent Aluminum Co., *supra*, 55 N.J. at 524, 263 A.2d 129. This Court also believes that New Jersey logically has a strong interest in holding a corporation doing business in this State—which is allegedly testing and manufacturing harmful drugs in New Jersey, and placing these drugs in the stream of interstate and international commerce—to a high standard of responsibility to the general public and to any individuals who may be harmed by such drugs either in New Jersey or elsewhere.

Infant-plaintiff disputes the necessity for this Court to carry its inquiry any further, and asserts that defendant's motion for summary judgment must be denied. Specifically, plaintiff argues that in view of New Jersey's favorable statute of limitations policy there is no compelling reason for this Court to displace New Jersey law and apply the Quebec time-bar—*even absent* any showing that defendant tested and manufactured thalidomide in New Jersey.

⬛⬛ I do not agree that defendant's motion deserves such cursory consideration. *Uniroyal* clearly shows New Jersey not to be open to forum-shopping litigants who seek to take advantage of the State's statutes of limitation when the State may be a completely disinterested forum for hearing their disputes. Furthermore, the fact that the corporate defendant is found in New Jersey for purposes of service of process does not, in and of itself, necessarily give this State a "substantial interest" in applying its own statute of limitations in preference to the limitations law of a foreign State.[22] The question remains

---

courts, from 'stale' claims. Application of the Quebec limitation period here furthers neither Quebec interest, but would frustrate New Hampshire's interests to some degree, for New Hampshire has said that its citizens should be suable and its courts open for a period long enough to permit this plaintiff's claim. . . . we are satisfied that the New Hampshire court would find that the interest of Quebec in whether this particular cause of action continued beyond the Quebec expiration was minimal and need not control." 429 F.2d at 26.

20. Other Canadian provinces such as Ontario and Saskatchewan do have infant tolling statutes. However, while this State may frown upon Quebec's failure to toll its prescription period on behalf of infants, comity requires that New Jersey not disregard Quebec's law without a compelling reason.

21. Normally, since "tolling" is dependent on the will of the legislature and not the judiciary, an action will be dismissed if it is brought under a particular statute which does not provide for tolling and the statute

of limitations has run. See Uscienski v. National Sugar Refining Co., 19 N.J.Misc. 240, 18 A.2d 611 (Cty.Ct.1941) (workmen's compensation) ; Grabert v. Central Railroad Co., 91 N.J.L. 604, 103 A. 212 (E. & A. 1918) (railroad act) ; Gillette v. Delaware, Lackawanna and Western R. R. Co., 91 N.J.L. 220, 102 A. 673 (E. & A. 1917) (F.E.L.A.) ; Mann v. United States, 399 F.2d 672 (9 Cir. 1968) (F.T.C.A.) ; Sgambati v. United States, 172 F.2d 297 (2 Cir. 1949) (Jones Act). However, infant-plaintiff in this suit does base his cause of action upon a New Jersey statute which is tolled on behalf of infants. N.J.S.A. 2A:14-2, 2A:14-21.

22. In *Uniroyal, supra,* the defendant was a national company which happened to be incorporated in New Jersey and was apparently doing a certain amount of business in New Jersey (Uniroyal tires were being sold here although the tire which blew out on the plaintiff was neither sold nor manufactured here). These contacts were held to be "not enough" to give New Jersey a sufficient interest in applying New Jersey limitations law in preference to that of North Carolina.

whether New Jersey does in fact have sufficient local contact with the subject matter of this litigation to justify the application of its statute of limitations policy in preference to Quebec's period of prescription. Unless New Jersey has a "substantial interest" in this suit, based upon both statutory policy arguments *and* the existence of sufficient concurrent contacts,[23] this Court will not ignore the clear mandate of *Uniroyal* to "borrow" the Quebec law.

In discussing the significance of New Jersey's actual contacts with the subject matter and parties in this litigation, a quick review of some of the factual aspects of this case is helpful. The drug thalidomide was originally developed by a German corporation, Chemie Grunenthal, in the late 1950s, and it was heralded as an exceptionally good sleeping pill and tranquilizer. However, in the early 1960s a startling number of deformed babies were born in various parts of the world, and the cause of many of these deformities was traced to the taking of thalidomide by mothers during their pregnancies.[24]

In 1958 Chemie Grunenthal licensed Richardson-Merrell (then known as Vicks Chemical Company) to distribute and manufacture thalidomide in North America. Defendant originally imported German-manufactured thalidomide in bulk quantities to North America, and eventually began manufacturing substantial quantities of the drug in one site in the United States—Phillipsburg, New Jersey. Defendant's thalidomide manufacturing operation in New Jersey took place in a plant of the J. T. Baker Company, a wholly owned subsidiary of the defendant. Initially from Germany, and later from New Jersey, thalidomide was transported to defendant's plant located in Cincinnati, Ohio. In Ohio the raw thalidomide was mixed with other ingredients (in themselves not harmful) sent to Ohio from suppliers located in Wisconsin, New York and Missouri. The resulting tablets, sold under the tradename Kevadon, were then punched out in Ohio and sent in bulk shipping drums to defendant's plan located at Weston, Ontario, Canada. These Kevadon tablets were then bottled, labeled, and distributed commercially for prescription sale in Canada by the Wm. S. Merrell Company a division of the defendant corporation.

During the time Kevadon was being sold in Canada, Lorraine Henry, a

---

Contrast, the more significant contacts present in an earlier case cited favorably in *Uniroyal*, 63 N.J. at 141 fn. 6, 305 A.2d 412, Marshall v. Geo. M. Brewster & Son, Inc., *supra*, and where New Jersey's longer limitation period was held to be controlling. *Brewster* is cited in *Uniroyal* as an example of a situation "involving significant interests of this state where it would be inequitable or unjust to apply" the borrowing rule formulated in *Uniroyal*:

"It was a wrongful death action in which the fatal injury occurred in Pennsylvania. While the decedent and his representative were nonresidents of this state, the defendants were New Jersey contractors *having their principal places of business in this state*. At the time of the injury they were temporarily engaged, as a joint venture, in a railroad improvement project in Pennsylvania in the course of which the injury happened." [Emphasis added.]

23. See Traynor, "Conflicts of Laws: Professor Currie's Restrained and Enlightened Forum," 49 Calif.L.Rev. 845 (1961):

"Once a foreign rule is put in issue, the forum examines the policy underlying its own rule and determines whether it was designed to apply to cases with foreign elements and whether local contacts are sufficient to give it an interest in applying that policy. Forum policy encompassing cases with foreign elements applies if the forum state has an interest, if both states have interests, and (when the action is not dismissed on forum non conveniens grounds) if neither state has an interest. The forum yields only when it is disinterested and there is a foreign interest."

24. Germany, England and Canada apparently suffered the most severe numbers of deformed children before the drug was banned in those countries. Thalidomide was never marketed commercially in the United States due to the diligence of the Pure Food and Drug Administration and the efforts of various individuals both in and out of government circles.

Quebec citizen, had these tablets prescribed for her by a Quebec physician, while she was confined in a Quebec hospital. Subsequently, sometime in July of 1961, Mrs. Henry ingested one or more Kevadon tablets. Later, in the same Quebec hospital, she gave birth to Denis Henry, whose numerous deformities have previously been mentioned. Infant-plaintiff alleges that the thalidomide ingredient contained in the Kevadon tablets his mother ingested entered her placental barrier or blood stream while she was pregnant and caused his injuries.

While Quebec appears to have more numerous contacts than New Jersey with the subject matter and parties in this litigation, this fact, previously discussed, is not necessarily determinative in choosing the applicable statute of limitations. The question now remains whether New Jersey's contacts are sufficient to justify applying our favorable statute of limitations policy. Infant-plaintiff contends that the clinical testing and manufacturing of thalidomide by defendant in New Jersey provide these necessary concurrent contacts.

Infant-plaintiff asserts that during the relevant time period in question, defendant distributed thalidomide to various hospitals and clinics in New Jersey, including 22 physicians who treated approximately 421 patients, 34 of them being women of child-bearing age. Defendant admits that it did conduct some clinical investigative work with thalidomide in New Jersey, but points out that this activity was only a small percentage of the nationwide clinical investigations it carried out in 43 States in this country. Since New Jersey's 22 physicians represented only 1.7% of the 1,248 physicians involved in these investigations, defendant contends this contact with New Jersey was minimal and irrelevant with respect to infant-plaintiff's cause of action.

I find that this testing activity in New Jersey is not as irrelevant as the defendant would have the Court believe. For example, it is quite likely that the clinical testing results which defendant garnered from various States, including New Jersey, were part of the proofs defendant offered to the Canadian Food and Drug Directorate that thalidomide was safe for consumption by Canadians. The favorable decision rendered by that Directorate in November 1960 allowing defendant to distribute thalidomide commercially in Canada in turn led to several hundred children being born deformed in that country. Also, the standard of care defendant exercised in conducting its clinical testing activity in New Jersey could very well become a critical trial issue relating to defendant's alleged negligence in deciding to market an unsafe drug.

Of even greater significance is the fact that defendant utilized New Jersey as the primary manufacturing and distribution site for its thalidomide operations in North America. Defendant does not deny the fact that at one time it did manufacture substantial amounts of thalidomide in New Jersey. However, it does dispute the infant-plaintiff's assertion that the particular Kevadon tablets ingested by Lorraine Henry contained thalidomide manufactured in this State. Specifically, Lorraine Henry alleges that she ingested Kevadon in July 1961. Defendant claims that all the Kevadon it sold in Canada prior to October 5, 1961 contained thalidomide manufactured in Stolberg, Germany, by Chemie Grunenthal. It was only *after* October 5, 1961, defendant contends, that it marketed Kevadon tablets in Canada containing thalidomide manufactured by the J. T. Baker Company, therefore giving this State no significant interest in the present litigation.

■ The Court has carefully reviewed the affidavits and exhibits submitted by the parties in this dispute relating to this particular factual issue. As a result of this examination I find that the issue cannot be satisfactorily or

fairly resolved on the present affidavits alone.[25]

Furthermore, even assuming the thalidomide which allegedly injured infant-plaintiff was made in Germany, the present state of the record is inconclusive as to whether defendant engaged in certain activities in New Jersey preparatory to its ultimate manufacture of thalidomide here, which activities may have played a part in influencing the thalidomide manufacturing process in Germany.

If, as appears in this case, a genuine issue of material fact remains in dispute, a court will normally deny a motion for summary judgment. United Advertising Corp. v. Metuchen, 35 N.J. 193, 172 A.2d 429 (1961); Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 142 A.2d 861 (1958); Welsh v. Griffith-Prideaux, Inc., 60 N.J.Super. 199, 158 A.2d 529 (App.Div.1960). Nonetheless, defendant asserts that as a matter of law it is entitled to summary judgment on the ground that the place of manufacture of a component ingredient of an allegedly harmful drug is not a significant contact giving New Jersey a "substantial interest" in applying its own statute of limitations in preference to "borrowing" Quebec's prescription statute. To support this argument defendant points out that the Court in Uniroyal did not even mention the site of manufacture of the defective Uniroyal tire as being relevant to a determination of the choice-of-law issue raised.

This Court can only speculate as to how the Supreme Court of this State would react if it were faced with the case at bar, particularly in view of the fact that Uniroyal is a landmark case. My interpretation of Uniroyal leads me to believe that had the place of manufacture of the allegedly defective tire in that case in fact been in New Jersey, the Court may very well have decided to disregard North Carolina's statute of limitations.[26] It is significant that the Uniroyal opinion favorably cites the choice-of-law method applied by the Wisconsin Supreme Court in a recent case where the place of manufacture partly determined the outcome of the statute of limitations issue. See 63 N.J. at 141, 305 A.2d 412; Air Products and Chemicals, Inc. v. Fairbanks Morse, Inc., 58 Wis.2d 193, 206 N.W.2d 414 (1973).

In Air Products the buyer of some large electric motors brought an action in Wisconsin against the manufacturer for negligence, strict liability, breach of implied warranties of mechantability and fitness for particular purposes, and breach of contract. Plaintiff was a Delaware corporation with its principal place of business in Pennsylvania. Defendant was a Delaware corporation with its principal place of business in

25. If the outcome of this litigation hinged on the manufacturing issue alone, and it were decided in favor of the defendant, as a practical matter it would not shield defendant from other suits brought by Canadian plaintiffs. Counsel for the infant-plaintiff in this suit claim, that they represent other Canadian children whose mothers did not take thalidomide prior to October 5, 1961 but took the drug subsequent to that date.

In any event, this Court believes that for choice-of-law purposes the relevance of a State's contact with the subject matter of a particular litigation need not necessarily turn on the existence of a causal connection between the particular contact and the ultimate injury. See Marshall v. Geo. M. Brewster & Son, Inc., supra. For choice-of-law purposes this Court also holds that a particular contact may be considered suffi-

cient if it bears some relevant connection to the general scope or chain of events surrounding a given cause of action, whether these events precede or closely follow it.

26. Independent inquiries made by this Court of plaintiffs' counsel in Uniroyal indicate that the manufacturing issue was not raised either at trial or on appeal because the defective tire in question had been manufactured in Indiana. Consequently, counsel for the plaintiffs in that case could not invoke the place of manufacture in their efforts to persuade the Court that New Jersey had a substantial interest in the case. Furthermore, had plaintiffs in Uniroyal been able to establish a manufacturing link in New Jersey, it is doubtful that the Court would have held that New Jersey was such an inconvenient forum for trial.

New York. Defendant's insurer was a Connecticut corporation with its principal place of business in that State. The defendant had manufacturing plants in several States, including one in Wisconsin, and all the electric motors which were the subject matter of the action were manufactured in Wisconsin, and shipped from there to the buyer's plants in other parts of the country where they were assembled.

Plaintiff pleaded the six-year Wisconsin statute of limitations for breach of contract, and the defendant raised the four-year Pennsylvania statute as an affirmative defense. Interestingly, all parties agreed that the remaining issues of law (damages, strict tort liability, and limitations of liability) were to be resolved under Pennsylvania law.

Although Wisconsin's only contact with the litigation was that it was the place of manufacture of the motor parts, the court found this a sufficient contact to conduct a governmental interest analysis inquiry. In holding the Wisconsin statute of limitations applicable, the court stated:

> "There can be no question but that the underlying purpose in the enactment of a statute of limitations is to protect defendants and the courts from ' . . . stale claims springing up at great distances of time and surprising the parties . . . ' when all the evidence, once vivid, has since become obscure. . . . The same essential policy considerations have guided the Pennsylvania courts as well. . . .

A determination that Wisconsin's six-year statute controls would in no way affect any legitimate interest of Pennsylvania since their statute, like ours, is designed to protect defendants and in this case, Air Products, the Pennsylvania resident, is the plaintiff —not the defendant. Likewise, Pennsylvania is in no position to any way influence what Wisconsin feels to be an appropriate period of protection for both itself and defendants from stale lawsuits. . . . " *Id.* at 419.

In conclusion, this Court cannot realistically ignore the fact that defendant's New Jersey activities played at least some part in the general thalidomide tragedy which occurred in Canada, a tragedy which was fortunately avoided in the United States.[27] New Jersey served as the center of defendant's thalidomide activities in this country, and New Jersey therefore played a role in contributing to the chain of events terminating in Canada. Canadian plaintiff and prospective plaintiffs allege that they have "come to the lion's den" to seek justice. This Court should not close its doors without giving plaintiffs an opportunity to be heard. Although New Jersey's surface contacts with the litigation are not as numerous as those of Quebec, I find that this State has the more substantial interest in seeing its own statute of limitations govern the timeliness of this action. Defendant's motion for summary judgment is denied.

Let an appropriate order be submitted.

27. Infant-plaintiff was only one victim in this tragedy. His counsel in fact admit that they represent approximately two dozen other deformed Canadian children whose causes of action in Canada are for one reason or another also time-barred. Thus, Denis Henry's cause of action is clearly brought in New Jersey as a "test case," in the hope that this Court will apply the State's favorable statute of limitations law. This Court will not shatter that hope.