STEVEN PFAU *ET AL.*, PLAINTIFFS-APPELLANTS, v. TRENT ALUMINUM COMPANY *ET AL.*, DEFENDANTS- RESPONDENTS.

Argued January 20, 1970—Decided March 17, 1970.

512

Mr. *Jacob D. Fuchsberg*, of the New York Bar, argued the cause for Plaintiffs-Appellants (*Messrs. Yesko* and *Marcus*, attorneys; Mr. *Elliot F. Topper*, of the New York Bar, of counsel).

Mr. *Richard D. Catenacci* argued the cause for Defendants-Respondents (*Messrs. Pindar, McElroy, Connell, Foley & Geiser*, attorneys; Mr. *John A. Pindar* of counsel; Mr. *Richard D. Catenacci* on the brief).

The opinion of the court was delivered by

PROCTOR, J.  This appeal presents a conflct of laws problem regarding a host's liability to his guest for negligence arising out of an automobile accident. Plaintiff, a Connecticut domiciliary, was injured in Iowa while a passenger in an automobile driven by a New Jersey domiciliary and owned by a New Jersey corporation. Iowa has a guest statute which provides that a host-driver is not liable to his passenger-guest for ordinary negligence.[1] The defendants pleaded, *inter alia*, the Iowa guest statute as a defense. On plaintiff's motion, Judge Demos, in the Law Division, struck

---

[1] The Iowa statute provides:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle." *Iowa* Code Annotated § 321.494.

this defense, holding that the New Jersey law requiring a host to use at least ordinary care for the safety of his guest was applicable. The Appellate Division ruled that the Iowa guest statute applied to the case and accordingly reversed and reinstated the defense. 106 *N. J. Super.* 324 (1969). Plaintiff petitioned this Court for certification. Since we were not confronted with a final judgment, we granted defendants' motion to dismiss, but allowed plaintiff 15 days to file a motion for leave to appeal an interlocutory order. Such a motion was filed and granted.

The facts pertinent to this appeal are undisputed. Plaintiff, Steven Pfau, a domiciliary of Connecticut, was a student at Parsons College in Iowa, and the defendant, Bruce Trent, a domiciliary of New Jersey, was a student at the same college. The boys met for the first time at Parsons.

Following the Easter vacation in 1966, the defendant, Bruce Trent, drove the automobile involved in the accident back to Iowa for his use at college. The automobile was registered in New Jersey in the name of the Trent Aluminum Company, a New Jersey corporation owned by Bruce's father. Bruce was using the car with the owner-corporation's consent. The vehicle was insured in New Jersey by a New Jersey carrier.

About a month after Bruce's return to college and several days before the accident, he agreed to drive the plaintiff to Columbia, Missouri, for a weekend visit. They never reached their destination. Shortly after leaving Parsons on April 22, 1966, and while still in Iowa, Bruce failed to negotiate a curve and the car he was operating collided with an oncoming vehicle driven by Joseph Davis. Mr. Davis and his wife and child, who were Iowa domiciliaries, were injured in the accident. Their claims have now been settled by defendants' insurance carrier. The sole question presented by this appeal is whether the Iowa guest statute is applicable to this action.

In *Mellk v. Sarahson,* 49 *N. J.* 226 (1967) this Court abandoned the old *lex loci delicti* rule for determining choice of law in tort cases, *e. g., Harber v. Graham,* 105 *N. J. L.*

213, 214–215 (E. & A. 1928), 61 A. L. R. 1232 and adopted the governmental interest analysis approach. We did so because we believed that the *lex loci delicti* doctrine worked unjust results in many cases and ignored the interests which jurisdictions other than that where the tort occurred may have in the resolution of the particular issues involved. *Id.* at 229. In *Mellk,* the plaintiff was injured while riding as a passenger in the defendant-driver's car when it struck a parked vehicle in Ohio. Plaintiff and defendant were both New Jersey domiciliaries and their guest-host relationship began in this state. When the accident happened, they were returning from a brief visit to the home of a mutual friend in Wisconsin. Defendant's automobile was insured and registered in New Jersey. In those circumstances we declined to apply the Ohio guest statute. The purposes discerned in the Ohio statute by that state's own courts were the prevention of collusive suits and the preclusion of suits by "ungrateful guests." Since both plaintiff and defendant were New Jersey domiciliaries and since the car was insured in New Jersey, we did not believe that Ohio had any interest in the application of its guest statute to the case. Instead, we applied New Jersey's strong declared policy of requiring a host to exercise at least ordinary care for the safety of his guest. *Cohen v. Kaminetsky,* 36 *N. J.* 276, 283 (1961).

Our decision in *Mellk* followed *Babcock v. Jackson,* 12 *N. Y.* 2d 473, 240 *N. Y. S.* 2d 743, 191 *N. E.* 2d 279 (1963) in which the New York Court of Appeals rejected the traditional choice of law rule which looked invariably to the place of the tort, and reached the same result as *Mellk* on similar facts. There, two New York residents began an automobile trip from that state to Ontario. The plaintiff, a guest in defendant's car, was injured when the defendant-driver struck a stone wall in Ontario. Although the Ontario statute barred any recovery by a guest-passenger against a host-driver, the court applied New York law which permitted the guest to sue his host. *Babcock* achieved widespread acclaim from legal scholars, *e. g., Cavers, Cheatham, Currie,*

Ehrenzweig, Leflar and Reese, "Comments on *Babcock v. Jackson,*" 63 *Colum. L. Rev.* 1212 (1963), and New York has continued to apply the *Babcock* approach in subsequent decisions. See *Dym v. Gordon,* 16 *N. Y.* 2d 120, 262 *N. Y. S.* 2d 463, 209 *N. E.* 2d 792 (Ct. App. 1965); *Macey v. Rozbicki,* 18 *N. Y.* 2d 289, 274 *N. Y. S.* 2d 591, 221 *N. E.* 2d 380 (Ct. App. 1966); *Tooker v. Lopez,* 24 *N. Y* 2d 569, 301 *N. Y. S.* 2d 519, 249 *N. E.* 2d 394 (Ct. App. 1969). These post-*Babcock* decisions have indicated some of the difficulties which are inevitable when a court applies a new approach to various factual patterns. We are faced with the same problem in the present case, for defendants do not argue that New Jersey should return to *lex loci delicti*; they disagree, however, with the plaintiff over what state's law modern conflicts principles dictate should be applied.

In order to determine whether the Iowa guest statute should apply to this case, we must first examine its purposes as articulated by the Iowa courts. See *Mellk v. Sarahson, supra,* 49 *N. J.,* at 230. These purposes are: "to cut down litigation arising from the commendable unselfish practice of sharing with others transportation in one's vehicle and protect the Good Samaritan from claims based on negligence by those invited to ride as a courtesy," *Rainsbarger v. Shepherd,* 254 *Iowa* 486, 492, 118 *N. W.* 2d 41, 44, 1 *A. L. R.* 3d 1074 (1962); to prevent ingratitude by guests, *Knutson v. Lurie,* 217 *Iowa* 192, 195, 251 *N. W.* 147, 149 (1933); to prevent suits by hitchhikers, *Id.;* "to prevent collusion suits by friends and relatives resulting in excessively high insurance rates," *Hardwick v. Bublitz,* 253 *Iowa* 49, 54, 111 *N. W.* 2d 309, 312 (1961).

The above policies expressed by the Iowa courts would not appear to be relevant to the present matter. This action will not increase litigation in the Iowa courts; no hitchhiker is involved; no Iowa insurer will be subjected to a "collusive suit" since the insurer is a New Jersey corporation; there is no "Good Samaritan" Iowa host-driver to be protected; and finally, there is no Iowa guest displaying his "in-

gratitude" by suing for ordinary negligence. The desire of Iowa to prevent collusive suits and suits by ungrateful guests and to cut down litigation would ordinarily apply to Iowa domiciliaries, defendants insuring motor vehicles there, and persons suing in its courts. *Melik v. Sarahson, supra,* 49 *N. J.,* at 231.

Defendants contend, however, that application of the Iowa guest statute is required because the plaintiff and the individual defendant were residing in Iowa at the time of the accident, because the host-guest relationship began and ended in Iowa, and because non-guest Iowa domiciliaries were injured in the accident. These factors were treated as significant in the post-*Babcock* decision of *Dym v. Gordon, supra.*

In *Dym* the plaintiff sued for injuries which she suffered in a collision between two automobiles in Colorado. Both the plaintiff-guest and the defendant-host were New York domiciliaries who were attending summer school at the University of Colorado when the accident occurred. They had gone separately to Colorado. The defendant was driving the plaintiff to a nearby golf course when the car they were riding in collided with another vehicle. Defendant's car was registered and insured in New York and he had brought it to Colorado for use at college. After returning to New York, the plaintiff brought suit to recover for her injuries. Defendant pleaded the Colorado guest statute which required a showing of intentional misconduct, intoxication, or "negligence consisting of a willful and wanton disregard of the rights of others" in order for a guest to recover from his host.

In a four to three decision, the New York Court of Appeals held that the Colorado guest statute was applicable. The majority reasoned that the statute was based on three policy considerations, *i. e.,* "the protection of Colorado drivers and their insurance carriers against fraudulent claims, the prevention of suits by 'ungrateful guests', and the priority of injured parties in other cars in the assets of the negligent

defendant." 16 *N. Y.* 2d at 124, 262 *N. Y. S.* 2d at 466,
209 *N. E.* 2d at 794. Since another vehicle was involved in
the accident, the majority believed that the policy of
priority of claims was a significant factor. The majority
also noted that the parties had become temporary residents
of Colorado, and that the host-guest relationship began and
ended in that state. This latter factor — the seat of the
relationship — was strongly emphasized.

` In a dissent, Judge Fuld (now Chief Judge) contended
that the case was not materially distinguishable from
*Babcock, supra.* He noted that the majority's conclusion
that Colorado's guest statute envisioned a third party priority
policy found no support in any judicial or legislative
pronouncements in Colorado. 16 *N. Y.* 2d at 132, 262
*N. Y. S.* 2d at 473, 209 *N. E.* 2d at 799.

In the later case of *Macey v. Rozbicki, supra,* the same
court, in a six to one decision, substantially narrowed *Dym.*
In *Macey,* the defendants, husband and wife, were New York
domiciliaries who were vacationing at their summer home
in Ontario. They invited the plaintiff, who was the wife's
sister and who was also a New York domiciliary, to spend a
10-day vacation with them. During this visit the plaintiff
was injured while riding as a passenger when defendants'
automobile collided with another vehicle owned and operated
by a Canadian. The plaintiff and wife defendant had in-
tended to drive to church in nearby Niagara Falls, Ontario,
and then return to the defendants' summer home. Plaintiff
sued in New York and the defendants pleaded the Ontario
guest act which immunizes an automobile owner and driver
from liability for personal injury to or death of his guest.
The court held that New York law permitting a guest to sue
his host for ordinary negligence was applicable and rejected
the defense of the Ontario guest statute. That the trip
in question was to begin and end in Canada was said to be
"not particularly significant," since the parties were living
permanently in New York and "undoubtedly" had made the
plans for the plaintiff's visit in New York. 18 *N. Y.* 2d at

292, 274 *N. Y. S.* 2d at 593, 221 *N. E.* 2d at 381. The court distinguished *Dym* by saying that in that case the principal situs of the relationship was in Colorado. No mention was made of any priority of claims theory based on the Canadian car involved in the accident.

In a concurring opinion Judge Keating pointed out that *Dym* and *Macey* were indistinguishable except for two facts: 1) in *Dym,* there was no prior arrangement for the plaintiff and defendant to meet in Colorado; and 2) that the parties in *Dym* were going to reside in Colorado for a longer period of time. He could not accept the majority's conclusion that these factors were grounds for a valid distinction. He reasoned that where the parties were New York domiciliaries and the automobile was insured under the laws of that state, the "seat of the relationship was irrelevant." Accordingly, he thought that *Dym* should no longer be followed. 18 *N. Y.* 2d, at 296–298, 274 *N. Y. S.* 2d, at 596–598, 221 *N. E.* 2d, at 384–385.

Most recently, the New York Court of Appeals decided *Tooker v. Lopez, supra,* which explicitly rejected the rationale and holding of *Dym.* 24 *N. Y.* 2d, at 574–575, 301 *N. Y. S.* 2d, at 523, 249 *N. E.* 2d, at 394. See also the concurring opinion of Judge Burke who wrote for the majority in *Dym,* 23 *N. Y.* 2d, at 591, 301 *N. Y. S.* 2d, at 538, 249 *N. E.* 2d, at 407–408. *In Tooker,* Catharina Tooker, a student at Michigan State University, was killed when the car in which she was a passenger overturned after the driver had lost control of the vehicle while attempting to pass another car. The driver, Marcia Lopez, was also killed and another passenger, Susan Silk, was seriously injured. The two girls were classmates of Miss Tooker at the University. At the time of the accident they were en route from the University to Detroit, Michigan, to spend a weekend. Miss Tooker and Miss Lopez were both New York domiciliaries. The automobile which Miss Lopez was driving belonged to her father who lived in New York, where the car was registered and insured.

The administrator of Miss Tooker's estate sued for wrongful death. The defendant pleaded as a defense the Michigan guest statute which bars a guest's recovery from his host for ordinary negligence.

Judge Keating, this time writing for the majority of the court, held that the New York standard of ordinary care for a guest was applicable to the case and that Michigan's guest statute could not be raised as a defense. The court held that in light of the policy considerations which underlie the ostensibly conflicting laws of Michigan and New York, it was clear that the latter had the only real interest in whether recovery should be granted. Judge Keating reasoned that the application of Michigan law would defeat New York's legitimate interest without serving any legitimate interest of Michigan. He identified New York's interest as its strong policy of holding all drivers of motor vehicles financially responsible for their negligent acts irrespective of the guest status of the victims. Michigan, on the other hand, had no interest in whether a New York plaintiff is denied recovery against a New York defendant where the car was insured in New York. He rejected as "plainly irrevelant" the fact that the deceased guest and driver were residing in Michigan for an extended period of time. 24 *N. Y.* 2d, at 577, 301 *N. Y. S.* 2d, at 525, 249 *N. E.* 2d 399. Although Judge Keating did not specifically treat the "seat of the relationship" factor, *i. e.,* that the trip was arranged for and began and ended in Michigan, it is obvious that he considered this factor equally irrelevant. Judge Burke in his concurring opinion, while marking the passing of *Dym* with regret, conceded that the "origin of the relationship" could not be considered in an interest analysis approach. 24 *N. Y.* 2d, at 590–591, 301 *N. Y. S.* 2d, at 537–538, 249 *N. E.* 2d, at 407–408.

Finally, Judge Keating abjured the third-party-fund theory enunciated in *Dym,* saying:

If the purpose of the statute is to protect the rights of the injured "non-guest", as opposed to the owner or his insurance carrier, we fail to perceive any rational basis for predicating that protection on the degree of negligence which the guest is able to establish. 24 *N. Y.* 2d at 575, 301 *N. Y. S.* 2d at 524, 249 *N. E.* 2d at 397.

In *Mullane v. Stavola,* 101 *N. J. Super.* 184 (Law Div. 1968), a pre-*Tooker* decision, Judge Halpern, sitting in the Law Division in our state, reached the same result on similar facts. There, plaintiffs-guests and defendant-host were all New Jersey domiciliaries in attendance at St. Leo's College in Florida. The defendants' vehicle was registered and insured in New Jersey. While returning to the campus from Dade City, Florida, the automobile operated by the defendant, William Stavola, and owned by his mother, Mary Stavola, collided with a telephone pole. Utilizing the same governmental-interest analysis approach taken later in *Tooker,* the court refused to apply Florida's guest statute which barred guests' suits for the ordinary negligence of their hosts. Judge Halpern reasoned that since all of the parties were domiciled here and since the car was registered and insured here, New Jersey had the "paramount governmental interest, or concern, in fixing the rights and liabilities between the parties." *Id.,* at 187–189. He explicitly rejected the result and rationale in *Dym.*

We are in accord with both *Tooker* and *Mullane.* While Iowa was the "seat of the relationship" in the instant case, this "contact" does not relate to any interest or policy behind Iowa's guest statute. Nor do we attach any importance to the temporary Iowa residence of plaintiff and defendant. Both parties were still permanently domiciled in other states which retained interests. Moreover, the insurer is a New Jersey corporation which issued its policy at rates applicable to New Jersey. See Ehrenzweig, "Guest Statutes in the Conflict of Laws—Towards a Theory of Enterprise Liability Under 'Foreseeable and Insurable Laws,'" 69 *Yale L. J.* 595, 603 (1960). Iowa's interest in these temporary residents is limited to enforcement of its

rules of the road at least where the litigation is not in that state.[2] Finally, we are not persuaded by the third-party-fund theory. Iowa has never expressed such a purpose behind its guest statute, and it is not appropriate for us to impute inarticulated purposes to the legislature of another state. See Comment, "Conflict of Laws—Two Case Studies in Governmental-Interest Analysis," 65 *Colum. L. Rev.* 1448, 1459 (1965). The danger of injured Iowa domiciliaries being deprived of available funds because of recovery by the negligent driver's guest is merely speculative. If Iowa had identified the protection of these third parties as a policy underlying its guest statute, we could still give effect to that policy by giving priority to the third party's judgment lien against defendant's assets. See Baade, "Counter-Revolution or Alliance For Progress? Reflections on Reading Cavers, The Choice-of-Law Process," 46 *Tex. L. Rev.* 141, 168 (1967). We need not decide whether such a procedure is the proper solution to this problem because the claims of the Iowa domiciliaries have been settled.[3]

It is clear to us that Iowa has no interest in this suit. Recovery for negligence in this action will not transgress any of the purposes behind Iowa's guest statute as enunciated by that state's courts or legislature, and will not in the slightest impair traffic safety in Iowa. Nor do we believe that the reasons urged by defendants for applying Iowa law

---

[2] It will be recalled that Iowa has identified the minimization of litigation as one of the policies underlying its guest statute and therefore it might have an interest in not entertaining this suit in its own courts. See opinion at 516, *supra*.

[3] Our determination that Iowa's guest statute does not have a third-party-fund policy behind it also makes it unnecessary to decide whether the settlement subsequent to the accident would satisfy this interest. If Iowa had identified this as an interest, we would be compelled to decide whether a state's interest is determined at the time of the tort or at the time of the trial. Compare *Miller v. Miller*, 22 *N. Y.* 2d 12, 290 *N. Y. S.* 2d 734, 237 *N. E.* 2d 877 (1968) with *Reich v. Purcell*, 67 *Cal.* 2d 551, 63 *Cal. Rptr.* 31, 432 *P.* 2d 727 (1967). See generally, Note, "Post Transaction or Occurrence Events in Conflict of Laws," 69 *Colum. L. Rev.* 843 (1969).

are valid. We are convinced that if the plaintiff were a New Jersey domiciliary Iowa's guest statute would be inapplicable.

In this case, however, we are faced with a more complex situation since plaintiff is a domiciliary of Connecticut. Thus, we must consider the law of both New Jersey and Connecticut. Connecticut long ago repealed its guest statute, *Con. Public Acts, 1931, Chap. 270, 1937 Supp.* § 351d repealing § 1628, and now permits guest-passengers to recover from their host-drivers for ordinary negligence. See *Massa v. Nastri,* 125 *Conn.* 144, 3 *A.* 2d 839, 120 *A. L. R.* 939 (1939); *Laube v. Stevenson,* 137 *Conn.* 469, 475–476, 78 *A.* 2d 693, 697, 25 *A. L. R.* 2d 592 (1951). There is no doubt that if this plaintiff-guest had been injured in a Connecticut accident by a Connecticut host-driver, there would be no bar to recover for ordinary negligence if suit were brought in that state. See *Palombizio v. Murphy,* 146 *Conn.* 352, 150 *A.* 2d 825, 73 *A. L. R.* 2d 1173 (1959); *Costanzo v. Sturgill,* 145 *Conn.* 92, 139 *A.* 2d 51 (1958).

Turning to New Jersey's law, we are led to *Cohen v. Kaminetsky, supra,* where we held that the strong policy of this state is to allow a guest-passenger to be compensated by his host-driver in cases of ordinary negligence. Thus, the substantive laws of Connecticut and New Jersey are in accord.

In *Reich v. Purcell,* 67 *Cal.* 2d 551, 63 *Cal. Rptr.* 31, 432 *P.* 2d 727 (1967), commented on by Cavers, Cheatham, D. Currie, Ehrenzweig, Gorman, Horowitz, Kay, Leflar, Rosenberg, Scoles, Trautman, and Weintraub in 15 *U. C. L. A. L. Rev.* 551 (1968), the California Supreme Court was faced with a situation similar in principle to the present case. There the court dealt with a Missouri statute which limited damages for wrongful death. Lee and Jeffry Reich, father and son, brought a wrongful death action for damages arising out of a head-on collision between two automobiles in Missouri. One of the automobiles was owned and operated by the defendant, a domiciliary of California,

who was on his way to a vacation in Illinois. The other automobile was owned and operated by plaintiffs' decedent, Mrs. Reich. The Reichs were domiciled in Ohio and Mrs. Reich and her two children were on their way to California where the family was contemplating settling. Mrs. Reich and one child were killed in the collision. Plaintiffs later became California domiciliaries. The estates of Mrs. Reich and the deceased child were being administered in Ohio. Neither Ohio nor California limits recovery in wrongful death actions. Missouri's statute limits damages in such cases to a maximum of $25,000. It was stipulated that the damages for Mrs. Reich's death were substantially in excess of that amount.

Writing for a unanimous court Chief Justice Traynor rejected defendant's contention that the Missouri ceiling applied. The court held that Missouri had no substantial interest in extending the benefits of its statute to travelers from states having no similar limitation. Having resolved that Missouri law did not apply, Justice Traynor next examined the interests of California and Ohio. He refused to give any weight to the plaintiffs' California domicile since they had moved to California after the accident. Nor did he believe that defendant's California domicile was significant since that state did not have any limitation on damages to protect its defendants. Accordingly, he concluded that Ohio, the state of decedents' domicile at the time of the accident, was the only interested state and that its law should apply to the case.

It may well be that in this case, however, New Jersey has an interest. We are not certain that a defendant's domicile lacks an interest in seeing that its domiciliaries are held to the full measure of damages or the standard of care which that state's law provide for. A state should not only be concerned with the protection and self-interest of its citizens. See *Tooker v. Lopez,* 24 *N. Y.* 2d, at 577, 301 *N. Y. S.* 2d, at 525–526, 249 *N. E.* 2d, at 399. In *Cohen v.*

*Kaminetsky, supra,* we emphasized a host's *duty* to his guests. There we said: "We see no reason why the host should be less vigilant for his own guest than he must be for the guest in another car. The duty to exercise reasonable care is as appropriate in the one situation as in the other." 36 *N. J.,* at 283. It would not seem just to limit the imposition of this duty to instances where a New Jersey host negligently injures a New Jersey guest in a state which has a guest statute. See *Mellk v. Sarahson, supra.* Therefore, if Connecticut had a guest statute in this case, we would be forced to choose between our state's policy of holding our hosts to a duty of ordinary care and Connecticut's policy of denying a guest recovery for the ordinary negligence of his host and we might have a true conflict. But since Connecticut has the same policy of applying principles of ordinary negligence to the host-guest relationship as does New Jersey, this case presents a false conflict and it is unnecessary for use to decide whether this state has an interest sufficient to warrant application of its law. See Leflar, *American Conflicts Law* at 328–29.

It would appear that Connecticut's substantive law allowing a guest to recover for his host's ordinary negligence would give it a significant interest in having that law applied to this case. Defendants argue, however, that if we apply Connecticut's substantive law, we should apply its choice-of-law rule as well. In other words, they contend Connecticut's interest in its domiciliaries is identified not only by its substantive law, but by its choice-of-law rule. Connecticut adheres to *lex loci delicti* and according to its decisions would most likely apply the substantive law of Iowa in this case. *E. g., Landers v. Landers,* 153 *Conn.* 303, 216 *A.* 2d 183 (1966). Defendants contend that plaintiff should not be allowed to recover when he could not do so in either Iowa where the accident occurred or in Connecticut where he is domiciled. We cannot agree for two reasons. First, it is not definite that plaintiff would be unable to recover in either

of those states.[4] More importantly, however, we see no reason for applying Connecticut's choice-of-law rule. To do so would frustrate the very goals of governmental-interest analysis. Connecticut's choice-of-law rule does not identify that state's interest in the matter. *Lex loci delicti* was born in an effort to achieve simplicity and uniformity, and does not relate to a state's interest in having its law applied to given issues in a tort case. See B. Currie, "The Disinterested Third State," 28 *Law & Contemp. Prob.* 754, 784–85 (1963); Cavers, *The Choice-of-Law Process* at 106; Ehrenzweig, *Conflict of Laws* at 235; Comment, "False Conflicts," 55 *Calif. L. Rev.* 74, 84–85 (1967). It is significant that in *Reich v. Purcell, supra,* the California Supreme Court applied the substantive law of Ohio to the Missouri accident. The court did not apply Ohio's choice-of-law rule which was *lex loci delicti,* and would have called for application of the Missouri limitation on damages. *Lyons v. Lyons,* 2 *Ohio St.* 2d 243, 208 *N. E.* 2d 533 (1965). Professor Kay in her comment on *Reich v. Purcell* was in agreement with

---

[4] We note in this connection that contrary to defendants' contention, it is not clear what substantive law Iowa would apply to this case. That state has recently departed from the traditional *lex loci delicti* rule, see *Fuerste v. Bemis,* 156 *N. W.* 2d 831 (Iowa Sup. Ct. 1968), and it cannot be assumed that Iowa would apply its guest statute to this case. Additionally, although Connecticut remains a *lex loci delicti* state, it has in the past employed some of the traditional escape devices to avoid the doctrine's harsh results. Thus, in *Levy v. Daniel's U-Drive Auto Renting Co.,* 108 *Conn.* 333, 143 *A.* 163 (1928), the Supreme Court of Errors of Connecticut avoided applying Massachusetts law where the automobile accident occurred by characterizing the problem as one of contract rather than tort. See Cavers, *The Choice-of-Law Process* at 173. It is possible that Connecticut would avoid applying the Iowa guest statute to these facts. If, as defendants urge, we should look to Connecticut's whole law, *i. e.,* both its substantive law and its choice-of-law rule, why should not Connecticut look to Iowa's whole law if suit were brought in Connecticut? If it did look to Iowa's whole law, Connecticut might well be led back to its own substantive law. See Leflar, *American Conflicts Law* at 215–16. See generally, Seidelson, "The Americanization of Renvoi," 7 *Duquesne L. Rev.* 201; Griswold, "Renvoi Revisited," 51 *Harv. L. Rev.* 1165, 1166–70 (1938).

the above authorities that only the foreign substantive law should be applied, and she agreed with the court in *Reich* that Ohio's choice-of-law rule should be ignored. Kay, "Comment on *Reich v. Purcell*," 15 *U. C. L. A. L. Rev., supra* at 589 n. 31 See also *Haumschild v. Continental Casualty Co., 7 Wis.* 2d 130, 95 *N. W.* 2d 814 (1959).

We conclude that since Iowa has no interest in this litigation, and since the substantive laws of Connecticut and New Jersey are the same, this case presents a false conflict and the Connecticut plaintiff should have the right to maintain an action for ordinary negligence in our courts. In this situation principles of comity, and perhaps the equal protection and privileges and immunities clauses of the Constitution, dictate that we should afford the Connecticut plaintiff the same protection a New Jersey plaintiff would be given. Cavers, *The Choice-of-Law Process,* 144 n. 8, 299 n. 14 (1965).

For the reasons expressed the order of the Appellate Division is reversed and the order of the trial court striking the separate defense of the Iowa guest statute is reinstated.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance* — NONE.